# EXHIBIT A

IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY

KEVIN PEARSON :
231 Kerby Landing Court
Odenton, MD 21113 :

    **Plaintiff** :
Vs.                                                    Civil No. C-02-CV-21
                                                             000643
AIMBRIDGE EMPLOYEE SERVICES CORP
AIMBRIDGE HOSPITALITY, L.L.C., :
EMBASSY SUITES MANAGEMENT, L.L.C. AND
EMBASSY SUITES, INC. :
Serve: Corporation Trust 2905 York Road Suite 201
       Lutherville, MD 21093 :

    **Defendants.** :
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

## FOR

## VIOLATIONS OF EMPLOYMENT CIVIL RIGHTS

**Now Comes** Kevin Pearson, by and through his undersigned counsel, with knowledge as to himself, and upon information and belief as to all else, hereby complains against the Defendant Aimbridge Employee Services Corp, Defendant Aimbridge Hospitality, L.L.C., Defendant Embassy Suites Management, L.L.C., and Defendant Embassy Suites, INC., as follows:

### NATURE OF CLAIM

1. This is an action for declaratory and injunctive relief and for damages, brought to remedy violations of employment civil rights.

2. That the Plaintiff Kevin Pearson (hereinafter "the Plaintiff" or "Mr. Pearson") exhausted all administrative prerequisites prior to filing this cause of action against the Defendants.

1

The right to file suit with this Honorable Court was issued by the Equal Employment Opportunity Commission ("EEOC").

3. That the Plaintiff is an adult male resident of Maryland. That at all relevant times the Plaintiff was an employee of the Defendants.

4. That at all relevant times, the Defendants operated within the State of Maryland.

5. That all acts occurred in the State of Maryland and this Honorable Court has concurrent jurisdiction over the subject matter involved in this case.

## STATEMENT OF FACTS

6. That on February 6, 2019, the Plaintiff was hired to work at a building known as Embassy Suites Hotel by Hilton Baltimore BWI Airport, which upon information and belief, is owned by Defendant Embassy Suites Management, L.L.C. and/or Defendant Embassy Suites, INC. (hereinafter "Hotel").

7. That the Plaintiff was employed at all relevant times by the Aimbridge Employee Services Corp, which is owned in whole or part by Aimbridge Hospitality L.L.C. (collectively "Defendant" and/or "Defendant Aimbridge").

8. That on or about February 8, 2019, the Plaintiff was instructed to report to, receive a new employee tour, and obtain new employment training from Mr. Damon Butler ("Butler"), who Plaintiff was advised held the position of Director and Regional Manager at said Hotel. That upon information and belief, Mr. Butler at all relevant times was also employed by the Defendant Aimbridge.

9. That during the said new employee tour, Mr. Butler escorted Plaintiff to a private conference room where the two were alone and a discussion then occurred. Mr. Butler

2

provided Plaintiff clothing and asked that the Plaintiff change into the clothing. It is believed said clothing was the designated uniform.

10. Plaintiff asked where the men's room is to change clothes in the restroom and Mr. Butler advised: "we are men, you can change here." Plaintiff started to change into the uniform (pants, dress shirt and vest). Mr. Butler advised that the Plaintiff missed a button and walked to the Plaintiff and stood very close to the Plaintiff and said: "let me help you button that." Shockingly, Mr. Butler then reached down, rubbed the clothing covering the Plaintiff's penis and grabbed his penis. Mr. Butler held, at least momentarily, the Plaintiff's penis with his hand. Plaintiff expressed immediate outrage.

11. That the Plaintiff shockingly jumped back and angrily shouted: "no, no – no way, don't do that."

12. That Mr. Butler then reached for Plaintiff's buttocks, grabbing same and laughed strangely. Plaintiff was in a state of shock.

13. That Mr. Butler then started a discussion of homosexual sex and asked how Plaintiff feels about gay men.

14. That the Plaintiff at all times stated to Mr. Butler that he was straight, not gay. All of this was outrageous, unwelcome and unwanted.

15. That the Plaintiff felt repulsed, sick and nauseated and went to the bathroom to compose himself. He was sweating and felt extreme anxiety.

16. That Plaintiff felt as though he should immediately leave the premises but composed himself, recognized his unfortunate financial circumstances and returned because he needed a job.

17. That Mr. Butler appeared unmoved by the Plaintiff's anxiety, apologized to the Plaintiff and advised he would "complete the tour, come with me." During this portion of the tour, Mr. Butler and Plaintiff walked by an office which Mr. Butler stated: "this is the human resources office where you go to complain about sexual harassment for what I just did to you – *but don't bother, they won't do anything to me about it anyway.*"

18. Thereafter, Mr. Butler brought Plaintiff to another private area of the hotel and grabbed the Plaintiff's buttocks by closing or cupping his hand on the Plaintiff. There was again direct unwanted and unwelcome physical contact. That the Plaintiff physically pushed Mr. Butler's arm away.

19. That Plaintiff went outside and had to take a walk for some time to contain his anger. He contemplated a fight or physical interaction to defend himself should this occur again.

20. The Plaintiff returned to find that Mr. Butler had apparently left the premises.

21. That Butler reemerged on the premises and approached the Plaintiff. Plaintiff approached Butler. Butler apologized for his behavior again and vacated the property.

22. Later that night, Mr. Butler texted unwanted and unwelcome text messages to the Plaintiff, which Plaintiff did not answer.

23. That in the following days, Plaintiff received more unwanted and unwelcome texts.

24. That Mr. Butler continued to sexually harass the Plaintiff.

25. That physical confrontation then occurred between the Plaintiff and Mr. Butler wherein Plaintiff expressed outrage and protest to these unwanted and unwelcome acts.

26. That the Plaintiff was advised Mr. Butler had a long history of sexually harassing employees of the Defendants and that many other subordinate male employees were similarly subjected to Mr. Butler's sexual harassment.

27. That the Defendants knew and/or had reason to know, that Mr. Butler had a long history of sexually harassing male employees and that Mr. Butler frequently singled out male subordinate employees with unwanted and unwelcome sexual advancements, with unwanted and unwelcome physical contact and other offensive sexually related communications.

28. That the Plaintiff was unfortunately the latest victim of his sexual harassment. Apparently, Mr. Butler, who at all relevant times was a Director and/or Regional Manager for the Defendants, was protected with impunity based on his high level position, knowledge and tenure with the Defendants.

## **RETALIATION**

29. That Mr. Butler and Plaintiff passed an office which Mr. Butler stated: "this is the human resources office where you go to complain about sexual harassment for what I just did to you – *but don't bother, they won't do anything to me about it anyway.*" That this at least initially had a chilling effect upon the Plaintiff's reporting Mr. Butler to management, as Plaintiff believed nothing would be done to correct this behavior based on Mr. Butler's statement and Plaintiff was only a new low level hire and it could jeopardize his employment.

30. That based on the Defendants' failure to intervene and discipline Mr. Butler for past acts of sexual harassment involving other male employees – as the Defendants apparently were well aware of Mr. Butler's past transgressions based on Mr. Butler's continued employment and that corporate did nothing to curtail his behavior, Mr. Butler appeared emboldened by such acts of impunity and retaliated against the Plaintiff with continued sexual harassment notwithstanding the Plaintiff's outrage and protestations.

5

31. After the Plaintiff complained about being the victim of sexual harassment, Mr. Butler's acts of harassment continued. Ultimately, the Plaintiff's complaints were investigated and Plaintiff's complaints that he was the victim of sexual harassment were validated as true.

32. Soon after the Plaintiff complained about being the victim of sexual harassment, the Plaintiff's work schedule and consequently work hours were reduced involuntarily. This occurred a short time after he reported the protestations that he was the victim of sexual harassment and it was determined by the Defendants that he had a valid claim.

33. After the Plaintiff complained about being the victim of sexual harassment, Plaintiff was told mixed messages about Mr. Butler. The Plaintiff observed that Mr. Butler still possibly maintained employment and was placed on investigative leave – however he still showed up on the premises where Plaintiff worked, and attempted communications despite allegedly being investigated and/or relocated to another property, which caused Plaintiff anxiety and fear for his safety. Plaintiff sought care from a psychologist.

34. That Plaintiff was constructively discharged from employment based on the combination of fear and anxiety that he would be the victim of assault and retaliation and that he observed that his services were no longer needed with a reduced work scheduled – which occurred only a short time after he protested the said employment civil rights violations.

## CAUSES OF ACTION

### Count One

*Violation of Title VII*
*(Sexual Hostile Environment)*

35. That Plaintiff reincorporates Paragraphs 1-34, as if fully set forth herein.

36. That the Plaintiff was at all relevant times an employee of the Defendants and therefore qualifies for relief as pursuant to *Title VII of the Civil Rights Act of 1964, et. seq., as amended* ("Title VII").

37. That the above paragraphs are incorporated herein as if fully set forth herein, constitute sex and/or gender discrimination and sexual hostile environment in violation of *Title VII*, and the specified acts against him were severe and pervasive.

38. That Plaintiff complained of said unlawful, unwanted and unwelcomed acts against him, but obtained no relief. That all of the above acts constitute a continuing violation of Plaintiff's rights to be free from sexual discrimination, harassment and/or hostile work environment.

39. The sexual harassment involved extremely offensive conduct which was both severe and pervasive and created a hostile work environment that a reasonable person would consider intimidating, hostile and abusive.

40. That the Plaintiff was subjected to physical and mental abuse by a supervisor.

41. The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, emotional distress, and mental anguish.

42. That said unlawful acts were intolerable under reasonably objective and subjective standards.

43. That the Defendants' conduct also inflicted economic and other harm and injuries on the Plaintiff's well-being.

### Count Two

### *Violation of Title VII*
### *(Retaliation)*

44. That Plaintiff reincorporates Paragraphs 1-43, as if fully set forth herein.

45. That the Defendants engaged in acts of retaliation against the Plaintiff which resulted in continued sexual harassment, a reduced work schedule, loss of employment, humiliation, emotional distress, mental anguish and loss of equal employment opportunities.

46. There is no dispute, and can be no dispute, based on the Defendants' own investigation, that Mr. Pearson was the unfortunate victim of sexual harassment.

47. The Defendants failed to take action to control and/or discipline Mr. Butler and this resulted in unlawful retaliation against the Plaintiff.

48. The above said acts of sexual harassment and retaliation were extremely unsettling and abusive to Mr. Pearson. Mr. Pearson became very ill.

49. Due to the post-traumatic stress, fear, anxiety and other injuries, coupled with the reduced work-schedule, Mr. Pearson was forced to leave his employment with the Defendants.

50. That the Defendants retaliated against the Plaintiff for protesting civil rights violations as an employee of the Defendants and otherwise voicing his concerns that he was the victim of sexual harassment, discrimination and retaliation. That Plaintiff, a lower level employee and new hire, was targeted as a *male* by the Defendant's Director and Regional Manager with unwanted and unwelcome heinous and hostile sexual attacks, sexual harassment, physical assaults, sexual language and subjected to unwanted and unwelcome sexual communications, texts, calls, and then culminated in physical confrontation and then retaliation for protesting all of this.

8

## EEOC ISSUED RIGHT TO SUE

51.   That the above facts have been timely filed and investigated by the Federal Equal Employment Opportunity Commission under Charge Number 531-2019-02382.

52.   That the EEOC issued to the Plaintiff a notice of right to sue.

53.   That the Plaintiff exhausted all administrative remedies with the EEOC prior to filing this suit and has the right to file suit before this Honorable Court.

54.   The said course of conduct as set forth above proximately damaged the Plaintiff by subjecting him to humiliation, emotional distress, and mental anguish. That Plaintiff suffered mental illness, wage loss and/or other economic and financial loss, for which he is entitled a remedy under *Title VII*.

55.   That the Plaintiff was clearly damaged by the acts of the Defendants.

## RELIEF REQUESTED

As to Counts One and Two, the Plaintiff Kevin Pearson respectfully requests that this Honorable Court:

a.   DECLARE that the conduct complained of by Plaintiff against the Defendants is in violation of the law;

b.   PERMANENTLY ENJOIN the Defendants from engaging in all practices found by this Court to be in violation of the law;

c.   AWARD Plaintiff compensatory damages, damages for emotional and physical pain and suffering, damages to his reputation, standing and employment history, economic damages including back and/or front pay, liquidated damages, punitive damages where permitted by law, and attorneys' fees and costs for this litigation where permitted by law, in the total amount of Three Hundred Thousand Dollars ($300,000.00), ***jointly and***

*severally*, against the Defendant Aimbridge Employee Services Corp, Defendant Aimbridge Hospitality, L.L.C., Defendant Embassy Suites Management, L.L.C., and Defendant Embassy Suites, INC; and

d.  GRANT such other and further relief to Plaintiff as the Court deems just and proper.

### JURY DEMAND

The Plaintiff hereby prays for and requests a trial by jury.

### PLAINTIFF'S CERTIFICATE OF REDACTION

Pursuant to Rule 20-201(f)(1)(a) of the Maryland Rules of Civil Procedure, we hereby certify that all filings in connection with the above documents contain no restricted information.

Respectfully submitted,

*/s/*

Mark R. Millstein, Esquire
110 E. Lexington Street
Suite 300
Baltimore, MD 21202
Tel: (410) 752-5920
Fax: (410) 752-7676
Email: Millsteinandshin@aol.com
Mark@MillsteinLegal.com
CPFN# 9906240281

*Attorney for the Plaintiff*
*Kevin Pearson*

10